Filed 11/17/20  P. v. Manila CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>EDUARDO RIOS MANILA,<br><br>    Defendant and Appellant. | D077350<br><br><br><br>(Super. Ct. No. FWV1403670) |

APPEAL from a judgment of the Superior Court of San Bernardino, Mary E. Fuller, Shahala S. Sabet, Judges.  Affirmed.

Christopher Nalls, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and Christine Y. Friedman, Deputy Attorneys General, for Plaintiff and Respondent.

# I

## INTRODUCTION

Defendant Eduardo Rios Manila appeals from a judgment entered following our remand in his prior appeal, *People v. Manila* (Jan. 24, 2019, D074569) [nonpub. opn.] (*Manila I*).[1] In *Manila I*, we reversed the judgment and remanded the matter with directions for the trial court to discharge Manila's retained counsel and appoint substitute counsel to represent Manila in post-conviction proceedings. (*Ibid.*) On remand, Manila's new counsel filed a motion for a new trial, which was denied. Upon agreement of the parties, the trial court affirmed Manila's original sentence of 42 years to life, consisting of consecutive determinant terms totaling 12 years for counts 4 through 9 plus two consecutive indeterminate terms of 15 years to life for counts 1 and 2.

In this appeal, Manila contends: (1) the trial court erred in not holding a new sentencing hearing; or (2) in the alternative, the court abused its discretion by using the same multiple victim factor to both enhance his sentences and impose consecutive 15-years-to-life terms.

As to the first argument, our disposition in *Manila I* did not order a new sentencing hearing, and in any event, Manila waived any challenge to the trial court's sentencing procedure.

As to the second argument, Manila forfeited his challenge to the consecutive sentences because he failed to raise a dual-use objection at sentencing. Furthermore, there was no error because the court did not rely on an improper dual-use factor to exercise its sentencing discretion and, even if it had done so, any alleged error was harmless.

---

[1] On our own motion, we take judicial notice of our prior unpublished appellate opinion. (Evid. Code, §§ 452, subd. (d), 459; Cal. Rules of Court, rule 8.1115(b)(1); *Fink v. Shemtov* (2010) 180 Cal.App.4th 1160, 1171.)

For all these reasons, we reject Manila's contentions and affirm the judgment.

II

FACTUAL AND PROCEDURAL BACKGROUND

A jury convicted Manila of eight felony counts of sexual misconduct committed against three different children. It found Manila guilty of one count of committing a lewd act on a child under 14 against victim Jane Doe (Pen. Code,[2] § 288, subd. (a); count 1), one count of committing a lewd act on a child under 14 against victim Janet Doe (§ 288, subd. (a); count 2), three counts of committing a lewd act on a child under 14 against victim Mary Doe (§ 288, subd. (a); counts 4–6), and three additional counts of committing a lewd act on a child of 14 or 15 against victim Mary Doe (§ 288, subd. (c)(1); counts 7–9). The jury also found that Manila committed lewd acts against more than one victim for counts 1 and 2 (§ 667.61, subds. (b) & (e)).[3]

We adopt the relevant factual background from our previous opinion in this case, as follows:

As to count 1, "[w]hen Jane Doe was 13 years old, she spent the night at the home of Janet Doe and slept in a recliner. At some point in the night, Jane woke to Manila touching her left breast over her clothing. She moved to her right side and Manila left. She then pulled her blanket up to her throat, wrapped it around her shoulders, and fell back asleep.

---

[2] All further statutory references are to the Penal Code unless otherwise noted.

[3] The jury acquitted Manila of one count of committing a lewd and lascivious act on a child under 14 against victim Janet Doe (§ 288, subd. (a); count 3).

"Sometime later, Jane woke up when Manila moved the blanket down a little and touched her breast over her clothing again. When she rolled over and pulled the blanket back over herself, Manila left.

"Jane eventually fell back asleep but awoke to Manila touching her breast over her clothing once again. She rolled over so her chest was against the arm of the recliner and fell back asleep with her hands crossed over her chest.

"While sleeping, Jane somehow ended up on her back with her hands still crossed over her chest and the blanket covering her up to her elbows. Manila moved her hands to her stomach and touched her left breast yet again. When she reached for the blanket and moved to her side a bit, he left, and she fell asleep again.

"Jane woke up once more when Manila moved the blanket off her chest and touched her left breast a fifth time. She moved and pulled the blanket up to her face. Manila then walked away and she fell back asleep." (*Manila I, supra*, D074569.)

As to count 2, "[w]hen Janet Doe was 13, Manila grabbed her and pinned her down on his bed with one hand. He put his other hand underneath her bra, cupped her breast, and moved his hand up and down." (*Manila I, supra*, D074569.)

As to counts 4 through 9, "[w]hen Mary Doe was 10, Manila put his hand under her clothes while she was asleep. He rubbed her nipples between his right thumb and forefinger. He stopped touching her and moved away when she started squirming.

"When Mary was 12, Manila had her take off her shirt and bra. He then cupped her breasts, felt them, and pushed them up.

4

"A few times when Mary was between 13 and 15, Manila had her approach him when he was naked and grab his erect penis. He then had her pull his penis to the side and hold it while he rubbed lotion on his thighs right below his testicles.

"Twice when Mary was 15, Manila helped her practice driving and had her sit on his lap. He put his hands in the crease between her vagina and thighs with the back of his hands touching her vagina over her clothing. He told her he would squeeze the left side to signal a left turn and the right side to signal a right turn." (*Manila I, supra*, D074569.)

The trial court sentenced Manila to a consecutive indeterminate term of 30 years to life, consisting of two consecutive terms of 15 years to life for counts 1 and 2 involving Jane Doe and Janet Doe respectively, plus determinate terms totaling 12 years based on his other convictions involving Mary Doe.

In his prior appeal, Manila argued: (1) the trial court erred by failing to discharge his retained counsel and appoint a substitute counsel to represent him in post-conviction proceedings; (2) the trial court erred in refusing to consider his motion for a new trial; and (3) the trial court abused its discretion by imposing consecutive indeterminate sentences for counts 1 and 2 because the court based its decision on the existence of multiple victims, a fact which already subjected him to indeterminate sentencing on these counts. (*Manila I, supra*, D074569.)

In *Manila I, supra*, D074569, we concluded the trial court erred by failing to discharge his retained counsel and appoint substitute counsel to represent him in post-conviction proceedings. Because we reversed the judgment and remanded with directions to the trial court to discharge

5

Manila's retained counsel and appoint substitute counsel, we did not reach a decision on Manila's other contentions.

On remand, Manila's new counsel filed a motion for a new trial. After denying the motion for a new trial in a subsequent hearing, the trial court stated, "[t]he appellate court sent this back only on the issue for hearing the motion for new trial ... [Manila] was sentenced. [The court] did not address the sentencing. I do not believe that I need to resentence him." Both the prosecutor and Manila's new counsel agreed. Accordingly, the trial court stated it "affirmed the sentence that was given on April 11, 2017," but that it would schedule another hearing and refer the matter of Manila's custody credits to the probation department.

III

DISCUSSION

A

*The Trial Court Did Not Err in Affirming Manila's Sentence*

Where the decision on appeal reverses with directions, the trial court is reinvested with only such jurisdiction as is defined by the remittitur's terms. The court is empowered to act only in accordance with the direction of the reviewing court; action that materially varies from those directions is unauthorized and void. (*People v. Picklesimer* (2010) 48 Cal.4th 330, 337; *Griset v. Fair Political Practices Com'n* (2001) 25 Cal.4th 688, 701 (*Griset*); *Hampton v. Superior Court* (1952) 38 Cal.2d 652, 655; see also *Rice v. Schmid* (1944) 25 Cal.2d 259, 263; *Butler v. Superior Court* (2002) 104 Cal.App.4th 979, 982.) This "strict rule applies [even if] the directions of the reviewing court are based upon an erroneous concept. The remedy of the party aggrieved by the error lies only in a petition [for rehearing] to a reviewing court." (*Puritan Leasing Co. v. Superior Court* (1977) 76

6

Cal.App.3d 140, 147; see also *Skaggs v. Los Angeles* (1956) 138 Cal.App.2d 269, 272–273.)

Applying the principles expressed above, the trial court did not err when it affirmed Manila's prior sentence because this court's directions in the disposition of *Manila I* did not expressly call for a new sentencing hearing. Instead, the disposition stated that "[o]nce Manila [obtained] substitute counsel, the case [would] proceed from the point at which Manila originally sought to discharge his retained counsel." (*Manila I, supra,* D074569.) The trial court affirmed his original sentence from 2017. After obtaining additional information from the probation department updating Manila's custody credits, the court modified the sentence to reflect credit for actual time served and conduct credits. The court then entered amended abstracts of judgment reflecting the updated prison credits.

Contrary to Manila's contention, the trial court did not leave his "case without a judgment at all" by not holding a new sentencing hearing. " ' "[A] judgment, no matter how designated, is the final determination of the rights of the parties in an action. Thus, an 'order' which is the final determination in the action is the judgment." ' " (*Marshall v. Webster* (2020) 54 Cal.App.5th 275, 283, quoting *Melbostad v. Fisher* (2008) 165 Cal.App.4th 987, 995; see also *Griset, supra,* 25 Cal.4th at p. 698 [it is not the form of the decree but its substance and effect that determines whether an adjudication is final and appealable].) We construe the court's minute order of January 31, 2020 wherein the court denied the new trial motion and affirmed the prior sentence as the trial court's pronouncement of judgment. The court later modified the judgment on February 14, 2020 to reflect Manila's credits. The amended abstracts of judgment summarized the court's judgment. (*People v.*

7

*Mitchell* (2001) 26 Cal.4th 181, 185; see also *People v. Zackery* (2007) 147 Cal.App.4th 380, 389.)

Moreover, Manila did not object to the trial court's proposed sentencing procedure. The trial court stated it did not believe Manila needed to be resentenced, and intended to affirm the prior sentence and consider revised custody credits. After the prosecutor agreed with the procedure, Manila was given an opportunity to respond. Manila had a meaningful opportunity to object, but instead agreed with the trial court's procedure. (*People v. Scott* (1994) 9 Cal.4th 331, 356 (*Scott*) ["complaints about the manner in which the trial court exercises its sentencing discretion and articulates its supporting reasons cannot be raised for the first time on appeal"].) Thus, it is "clear that defense counsel was willing and able to interrupt the court and that the court was willing to entertain counsel's arguments ...." (*People v. Downey* (2000) 82 Cal.App.4th 899, 916.) Accordingly, Manila waived any objection that the trial court was required to conduct a new full sentencing hearing. (*Ibid.*)

B

*The Trial Court Did Not Abuse Its Discretion in*

*Imposing Consecutive Sentences*

With respect to counts 1 and 2 relating to Jane Doe and Janet Doe, the jury found true the allegations that the section 288, subdivision (a) offenses (lewd conduct against a minor under 14 years) were committed against multiple victims. (§ 667.61, subds. (b) & (e)(4).) These findings subjected Manila to the one-strike sentencing scheme set forth in section 667.61, which requires separate sentences "in the state prison for 15 years to life" for section 288, subdivision (a) offenses committed "against more than one victim." (§ 667.61, subds. (b) & (e)(4); *People v. Wutzke* (2002) 28 Cal.4th 923, 931 [section 667.61 "contemplates a separate life term for each victim

8

attacked on each separate occasion"], citing with approval *People v. DeSimone* (1998) 62 Cal.App.4th 693, 696–699 [rejecting a contention that section 667.61 permits only one life sentence per case]; *People v. Morales* (2018) 29 Cal.App.5th 471, 482–484 (*Morales*) [same].)

Rule 4.425(a) of the California Rules of Court sets forth crime-related criteria affecting the imposition of consecutive rather than concurrent sentences: "(1) The crimes and their objectives were predominantly independent of each other; [¶] (2) The crimes involved separate acts of violence or threats of violence; or [¶] (3) The crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior." (Cal. Rules of Court, rule 4.425, subd. (a).)

Trial courts have broad discretion to decide whether concurrent or consecutive sentences are appropriate. (*People v. Clancey* (2013) 56 Cal.4th 562, 579–580; *People v. Leon* (2010) 181 Cal.App.4th 452, 468.) "In the absence of a clear showing of abuse, the trial court's discretion in this respect is not to be disturbed on appeal. [Citation.] Discretion is abused when the court exceeds the bounds of reason, all of the circumstances being considered." (*People v. Bradford* (1976) 17 Cal.3d 8, 20.) Moreover, only one criterion favoring imposition of consecutive sentences is necessary to support consecutive sentencing. (*People v. Bravot* (1986) 183 Cal.App.3d 93, 98.)

Manila concedes he was subject to sentencing under section 667.61, and recognizes that this statutory scheme required two 15-years-to-life sentences. He argues, however, the trial court erred in imposing consecutive, rather than concurrent, life terms because the fact that made him eligible for "one strike" sentencing—the multiple victim circumstance—was the same fact relied upon to justify consecutive terms.

9

Manila forfeited this objection because he did not raise a dual-use objection at the sentencing hearing. (*Scott*, *supra*, 9 Cal.4th at pp. 353–356; *People v. Erdelen* (1996) 46 Cal.App.4th 86, 90–91.)

In any event, we conclude the court did not rely on an improper dual-use factor to exercise its sentencing discretion. Defense counsel urged the trial court to exercise its discretion to impose concurrent rather than consecutive life terms, but did not provide any compelling reasons to convince the court to do so. He argued the court should impose only one term of 15 years to life for counts 1 and 2 rather than two terms, which is an argument that "[e]very court that has ever considered this issue has rejected...." (*Morales*, *supra*, 29 Cal.App.5th at p. 483; see also *People v. Zaldana* (2019) 43 Cal.App.5th 527, 531–532; *People v. Andrade* (2015) 238 Cal.App.4th 1274, 1307–1308; *People v. Valdez* (2011) 193 Cal.App.4th 1515, 1522.)

Later, without further discussion, defense counsel asked the court to run the sentences concurrently if it did not agree with the argument about imposing one term for counts 1 and 2. In response, the prosecutor argued "there were two separate victims that were molested on two separate occasions ... one involved [Manila's] current girlfriend's daughter when she was thirteen years old, in his bedroom. The other involved Janet Doe's friend when she was spending the night, also who was thirteen years of age at the time."

The trial court began its sentencing discussion by explaining it heard all of the testimony in the case. It noted there were actually "three separate victims in this case" and the jury found him guilty not only of the counts against Jane Doe and Mary Doe, but also of the count against Janet Doe.

The court referred to the fact that the victims in counts 1 and 2 were separate when imposing a consecutive term for count 2. However, viewed in

context with the prosecutor's statement that victims were "molested on two separate occasions" and the court's statement after pronouncing both the indeterminate and determinate sentences that it "selected consecutive sentences on these offenses because they are each separate offenses that occurred over a significant span of time," we infer that the trial court imposed consecutive sentences based on the fact that the crimes occurred during separate and independent incidents. This is a different concept than the fact that Manila committed the conduct against multiple victims. Therefore, the trial court considered appropriate aggravating factors in imposing consecutive sentences for the indeterminate terms. (See Cal. Rules of Court, rule 4.425.)

Even if the court had identified the multiple victim element as a factor for imposing consecutive sentences, remand is proper only if it is reasonably probable that a more favorable sentence would have otherwise resulted. (*People v. Osband* (1996) 13 Cal.4th 622, 728.) Based on the record before us reflecting Manila committed numerous lewd acts against three separate minor victims on separate occasions over a lengthy span of time, it is not reasonably probable the court would impose a different sentence on remand.

IV

DISPOSITION

The judgment is affirmed.


McCONNELL, P. J.

WE CONCUR:



HALLER, J.



O'ROURKE, J.